UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW CLARK, | Civil Action No. 19-12077 (MCA) |
| Petitioner, | |
| v. | OPINION |
| SHERRY YATES, et al., | |
| Respondents. | |

This matter has been opened to the Court by Petitioner Andrew Clark's Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his continued civil commitment at the Special Treatment Unit ("STU") in Avenel, New Jersey. For the reasons explained in this Opinion, the Court denies habeas relief and also denies a certificate of appealability.

I. **BACKGROUND AND PROCEDURAL HISTORY**[1]

On November 5, 2014, Clark was committed to the STU pursuant to the Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-27.24 to -27.38, after serving his state sentence. Pursuant to the SVPA, Clark is afforded annual review hearings at which the State must reestablish each prong of the SVPA. N.J.S.A. 30:4-27.35. The annual review hearing at issue in this matter was conducted on February 18 and March 1, 2016. *See* State's Exhibit A. The trial court issued its decision on March 2, 2016, *see* State's Exhibit E, and by judgment entered March 7, 2016, the trial court continued Clark's civil commitment under the SVPA. *See* State's Exhibit A.

---

[1] This factual recitation and procedural history is taken from the record in this matter. The Court considers Petitioner specific arguments and relevant facts in the section resolving Petitioner's claims for relief.

Clark appealed from the Law Division's order continuing his commitment to the STU, a secure facility designated for the custody, care and treatment of sexually violent predators ("SVPs"). In an unpublished decision, the Appellate Court rejected Petitioner's arguments and affirmed the trial court's order continuing Petitioner's civil commitment. *See Matter of Civil Commitment of A.C.*, 2018 WL 3636446, at *4 (N.J. Super. App. Div. Aug. 1, 2018). On March 21, 2019, the New Jersey Supreme Court denied Clark's petition for certification. *Matter of Commitment of A.C.*, 237 N.J. 184 (2019).

Petitioner thereafter filed the instant habeas petition, which asserts one ground for relief. *See* ECF No. 1. The state filed their answer on July 13, 2019, ECF No. 5, and Petitioner did not file a traverse. *See id.*

## II. STANDARD OF REVIEW

Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner has the burden of establishing each claim in the petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub. L. No. 104-132, tit. I, § 101 (1996), 28 U.S.C. § 2244, federal courts in habeas corpus cases must give considerable deference to determinations of state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Where a state court adjudicated a petitioner's federal claim on the merits,[2] a federal court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S. 37, 40-41 (2012) (quoting 28 U.S.C. § 2254(d)).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," at of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405-06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e]

---

[2] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that (1) finally resolves the claim, and (2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." *Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

[Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 29 U.S.C. § 2254(e)(1); *see Miller–El v. Dretke*, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A petition for a writ of habeas corpus "shall not be granted unless ... the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1); *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017). This Court may, however, deny petitioner's unexhausted claim on the merits. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

### III. ANALYSIS

In his habeas Petition, Clark asserts a single ground for relief:

> "The SVP-Act still fails on a rational basis test, because the supposed factual basis upon which it rests can be demonstrated to be unsound, unscientific, unsupported, and even contradicted in the scientific literature. In sum, it can be said to lack a sound basis in empirical fact, in other words it lacks a rational basis. In the case of the SVP-Act, New Jersey, along with twenty other states, enacted Civil Commitment statutes to combat what at the time was

> perceived as the "high risk of recidivism" and to provide "appropriate treatment" for the mental abnormalities and personality disorders that predisposed the individual(s) to commit future sex offenses. However, both the high recidivism rate and the supposed effect of treatment have emerged as chimeras, based on prejudice rather than science or actual fact. In Mr. clark's [sic] (A.C.'s) case the State failed to establish a factual basis for his Commitment.
>
> The court is under these circumstances obligated to evaluate the empirical basis of the law being challenged.

Petition at 6.  It is not clear if Clark is reasserting the claims for relief he raised before the Appellate Division, challenging the constitutionality of the SVPA, or both.  In light of his pro se status, the Court will address the claims he raised on appeal and his broad challenge to the constitutionality of the SVPA.

In its decision affirming the trial court's Order continuing Clark's civil commitment, the New Jersey Superior Court Appellate Division provided the following factual recitation of Clark's offense history and the evidence adduced at his periodic review hearing:

> We need not recount in substantial detail A.C.'s[3] prior criminal history, which dates back to the early 1960s. In sum, A.C. has an extensive criminal history consisting of sexual and non-sexual offenses. In 1964, A.C. was charged in Indiana with sexual assault and assault and battery. He was convicted of assault and battery, but the record is unclear as to the disposition of the sexual assault charge. Defendant was thereafter twice convicted of attempted rape in Indiana in 1967 and 1970.
>
> A.C.'s predicate conviction arose from a November 1979 arrest for breaking into the home of a seventy-four-year old woman, who he then sexually assaulted. Following a 1980 jury trial, A.C. was convicted of first-degree aggravated sexual assault, first-degree aggravated assault, first-degree robbery, and second-degree burglary, for which he was sentenced to an aggregate forty-five-year prison term.
>
> A.C. escaped from prison in 1981 and was not recaptured until 1985. Following a jury trial in 1990, A.C. was convicted of the escape, and a consecutive fifteen-year prison sentence was imposed. While incarcerated in state prison, A.C. incurred twenty-

---

[3] The Appellate Division refers to Clark as A.C. throughout the Opinion.

four disciplinary infractions, including refusal to obey, destroying property, possession of gambling paraphernalia, disruptive conduct, refusing work assignments, threatening bodily harm, and refusing to submit to a search. The most recent institutional infraction occurred in July 2012.

On November 5, 2014, A.C. was committed to the STU under the SVPA after serving his sentence. The present appeal arises from a periodic review of A.C.'s commitment, which was conducted by Judge James F. Mulvihill on February 18 and March 1, 2016. At the hearing, the State relied on the expert testimony of psychiatrist Roger Harris, M.D., and psychologist Tarmeen Sahni, Psy.D., a member of the STU's Treatment Progress Review Committee (TPRC). A.C. presented the expert testimony of psychiatrist Michael Kunz, M.D., and psychologist Gianni Pirelli, Ph.D.

After interviewing A.C. and reviewing previous psychiatric evaluations, STU treatment records, and related documents, Harris, Kunz and Pirelli prepared reports, which were admitted into evidence. Dr. Sahni participated in the TPRC's review of A.C.'s progress and treatment and authored the TPRC report, which was also admitted into evidence, as were various other treatment notes and records.

A.C. was born in 1944, and was seventy-one years old at the time of the hearing. Notwithstanding A.C.'s age, Dr. Harris concluded he met the criteria of a sexually violent predator and was "highly likely to sexually re-offend if placed in a less restrictive setting" because he has not mitigated his risk. Dr. Harris further opined that if A.C. were to be released from the STU with conditions, he was highly unlikely to comply with those conditions.

Based on A.C.'s "long history of disregarding the rights of others," his failure "to conform to social norms," his "irritab[ility,]" "aggressive[ness,]" "profound reckless disregard for the safety of others[,]" and "lack of remorse and being indifferent to the way he has hurt others," Dr. Harris diagnosed A.C. with severe antisocial personality disorder. Dr. Harris elaborated that A.C. "maintains the ... antisocial attitudes and behaviors that I believe are the nexus for his sexual offending [and are] alive and well today .... I don't think [A.C.] is that different today at age [seventy-one] than he was throughout the [1970s] when [he was] sexually offending."

Dr. Sahni testified A.C. had not received "any kind of sex offender treatment" that would reduce "his risk to sexually offend ...." The TPRC recommended promoting A.C. to Phase 2 of treatment, which "is considered the beginning phase[ ] of treatment[.]" Dr. Sahni noted A.C. "continues to deny and does not take any responsibility for any of the offenses that he's been charged with."

Like Dr. Harris, Dr. Sahni diagnosed A.C. as suffering from a severe antisocial personality disorder. Additionally, Dr. Sahni made a provisional diagnosis of paraphilic disorder, explaining that A.C. "most likely has the disorder, however, there's insufficient evidence to fully diagnose [him] with such disorder." A.C. scored a four on the Static-99R,1 placing him in the "moderate high" risk to sexually reoffend. In accord with Dr. Harris, Dr. Sahni opined it was: (1) "highly likely" that A.C. would sexually re-offend in the foreseeable future unless he were confined in a secure facility for treatment; and (2) "highly unlikely" that A.C. would comply if he were to be released from the STU with conditions.

Dr. Kunz initially interviewed A.C. and prepared a report on behalf of the State, but was ultimately subpoenaed to testify on behalf of A.C. at the review hearing. Dr. Kunz similarly determined that A.C. suffered from antisocial personality disorder. In accordance with the State's experts, Dr. Kunz testified "that [A.C.] has fairly consistently denied having committed any sexual offenses, so in that regard he has not addressed the offenses."

A.C. also scored a four on the Static-99R administered by Dr. Kunz, "which place[d] him in a moderate high risk for reoffense." However, Dr. Kunz noted "the authors of Static-99R advise caution when using [it] ... in the age group of over [seventy] because the predictive ability of this instrument is not as good as it is in younger age groups." Rather, the advice of the Static-99R authors "is that the offenders over the age of [seventy] should be assumed to have low risk."

In contrast to Dr. Sahni, Dr. Kunz did not diagnose A.C. with paraphilia. Dr. Kunz opined A.C.'s "risk for reoffense is low," but nonetheless "it would be prudent to impose whatever conditions could further decrease [A.C.'s] risk for reoffense." On cross-examination, Dr. Kunz conceded he was unable to state within a reasonable degree of medical probability that, if A.C. were conditionally discharged, he would be highly likely to comply with the conditions of release.

A.C.'s expert psychologist, Dr. Pirelli, also concluded A.C. suffers from antisocial personality disorder. Dr. Pirelli was unable to find A.C. has a paraphilia "at this time," but noted it was "possible by history given [A.C.'s] offense history that he would have likely met [that] criteria in the past."

According to Dr. Pirelli, A.C.'s age decreased his chances of sexually offending, which he described as an "extremely rare event" for individuals, such as A.C., over age seventy. Moreover, Dr. Pirelli's evaluation revealed nothing about A.C. that would lead him to depart from that statistical analysis. Similar to Dr. Kunz,

> Dr. Pirelli was unable to find, within a reasonable degree of medical certainty, that A.C. was highly likely to comply with all conditions of release were that to occur.
>
> In an oral opinion rendered on March 2, 2016, Judge Mulvihill found Dr. Harris to be a "very credible witness." Likewise, Judge Mulvihill found Dr. Kunz credible, but disagreed with Dr. Kunz's assessment "that the aging process has mitigated [A.C.'s] risk." Rather, the judge found A.C. "has antisocial personality disorder that's alive and well, and that he's no different than the man he was back when he last offended. And he denies all of his offenses. He needs treatment to mitigate his risk." Similarly, while Dr. Pirelli testified credibly, the judge disagreed with Dr. Pirelli's testimony that A.C. was not highly likely to reoffend due to his age.
>
> After recounting the testimony of all four experts, and detailing A.C.'s criminal and disciplinary history and treatment record at the STU, Judge Mulvihill concluded A.C.'s commitment should continue. The judge found
>
>> by clear and convincing evidence [A.C.] has been convicted of sexual violent offenses, [and] ... he continues to suffer mental abnormality or personality disorder that does not spontaneously remit, antisocial personality disorder. And also I find that there is the paraphilia, at least by history, and it should be at least a rule out or provisional, and clear and convincing evidence that presently he is highly likely to sexually reoffend if not confined to a secure facility for control, care, and treatment, that the antisocial personality disorder affects him emotionally, cognitively, volitionally, and predisposes him to sexual violence, he has serious difficulty controlling his sexual violent behavior, and I find that he's highly likely to sexually reoffend at the present time.
>
> The judge entered a memorializing order continuing A.C.'s commitment, and this appeal followed.

*Matter of Civil Commitment of A.C.*, 2018 WL 3636446, at *1-3 (N.J. Super. App. Div. Aug. 1, 2018).

Clark argued on appeal that Judge Mulvihill erred in continuing his civil commitment, and in finding he was highly likely to commit acts of sexual violence in the future. *Id.* at *3. Clark further asserted that the trial judge's reliance on the testimony of Dr. Harris and Dr. Sahni

was not supported by credible evidence, and that in light of Clark's age, the State's experts failed to prove the required link between his past crimes and his present danger to sexually reoffend. *See id.* The Appellate Division rejected Clark's arguments as follows:

> "The SVPA authorizes the involuntary commitment of an individual believed to be a 'sexually violent predator' as defined by the Act." *In re Commitment of W.Z.*, 173 N.J. 109, 127 (2002) (quoting N.J.S.A. 30:4-27.28). "The definition of 'sexually violent predator' requires proof of past sexually violent behavior through its precondition of a 'sexually violent offense ....' " *Ibid.* It also requires that the person "suffer[ ] from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." *Ibid.* (quoting N.J.S.A. 30:4-27.26).
>
> "[T]he mental condition must affect an individual's ability to control his or her sexually harmful conduct." *Ibid.* "Inherent in some diagnoses will be sexual compulsivity (i.e., paraphilia). But, the diagnosis of each sexually violent predator susceptible to civil commitment need not include a diagnosis of 'sexual compulsion.'" *Id.* at 129.
>
> The same standard that supports the initial involuntary commitment of a sex offender under the Act applies to the annual review hearing. *See In re Civil Commitment of E.D.*, 353 N.J. Super. 450, 452-53 (App. Div. 2002). In either case, "the State must prove by clear and convincing evidence that the individual has serious difficulty controlling his or her harmful sexual behavior such that it is highly likely that the person will not control his or her sexually violent behavior and will reoffend." *W.Z.*, 173 N.J. at 133-34.
>
> As the fact finder, "[a] trial judge is 'not required to accept all or any part of [an] expert opinion[ ].'" *R.F.*, 217 N.J. at 174 (second and third alterations in original) (quoting *D.C.,* 146 N.J. at 61). Furthermore, "an appellate court should not modify a trial court's determination either to commit or release an individual unless 'the record reveals a clear mistake.'" *Id.* at 175 (quoting *D.C.*, 146 N.J. at 58).
>
> We are satisfied from our review of the record that Judge Mulvihill's findings are supported by substantial credible evidence. Based on credible expert testimony, the judge determined that A.C.'s disorders, past behavior, and treatment progress demonstrated that he was highly likely to engage in acts of sexual violence unless confined. The judge was not required to accept the testimony of A.C.'s witnesses that his risk of sexually reoffending

> was low, especially when both experts were unable to state with any degree of probability that A.C. would comply with conditions imposed by the court if he were released back into the community. Given our limited scope of review, the judge's decision to continue A.C.'s commitment, to which we owe the "utmost deference" and may modify only where there is a clear abuse of discretion, *In re J.P.*, 339 N.J. Super. 443, 459 (App. Div. 2001), was proper.

*Id.* at *3-4.

Here, the New Jersey Appellate Division did not unreasonably apply any clearly established federal law in rejecting Petitioner's arguments. Indeed, Dr. Harris and Dr. Sahni's testimony and expert reports, which were submitted to and reviewed by the trial court, established each prong of the SVPA. *See* State's Exhibits C, I. Both mental health professionals reviewed Clark's entire offending and treatment histories, personally examined him, and completed actuarial tools to help assess his risk to reoffend. *Id.* Both doctors noted the overtly compulsive nature of Clark's offending. *Id.* Both of the state's experts diagnosed Clark with antisocial personality disorder predisposing him to commit acts of sexual violence. *Id.* Significantly, Clark's own two expert witnesses conceded his dangerousness, though they opined that his advanced age alone may mitigate his risk. *See* State's Exhibit D. In short, the testimony presented unequivocally satisfied the three prongs of the SVPA. Thus, to the extent Petitioner claims that the trial court erred in continuing his civil commitment, that claim is denied.

In his habeas Petition, Clark appears to argue broadly that the SVPA is unconstitutional. The Court denies this claim on the merits, as it ignores all relevant precedent. The constitutionality of New Jersey's SVPA, as well as similar laws in other states, is well settled. *See, e.g., Addington v. Texas*, 441 U.S. 418 (1979); *Kansas v. Hendricks*, 521 U.S. 346 (1997); *Kansas v. Crane*, 534 U.S. 407 (2002); *Seling v. Young*, 531 U.S. 250 (2001); *see also In re Commitment of W.Z.*, 173 N.J. 109, 133–34 (2002) (finding that "SVPA is not

violative of substantive due process" where the State proves "by clear and convincing evidence that the individual has serious difficulty controlling his or her harmful sexual behavior such that it is highly likely that the person will not control his or her sexually violent behavior and will reoffend"). The SVPA contains numerous procedural safeguards allowing for the annual review of the need for continued commitment in addition to the opportunity to schedule additional review hearings. *See* N.J.S.A. 30:4-27.32; N.J.S.A. 30:4-27.35; N.J.S.A. 30:4-27.36. The duration of confinement is linked to the stated purpose of commitment -- that is, until such time as it is determined that the person is no longer highly likely to engage in acts of sexual violence if not confined. N.J.S.A. 30:4-27.36. The SVPA also provides for treatment appropriately tailored to address the needs of sexually violent predators. N.J.S.A. 30:4-27.34. In short, Clark's broad assertion that the SVPA is unconstitutional lacks merit, and habeas relief on this issue is likewise denied.

### IV. CONCLUSION

For the reasons explained in this Opinion, the Court denies the Petition. Moreover, the Court denies a certificate of appealability as reasonable jurists would not find the Court's assessment debatable. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right."); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An appropriate Order follows.

5/20/22

_____
Hon. Madeline Cox Arleo
United States District Judge